188 So.2d 516

**STATE** of Alabama ex rel. **ATTORNEY GENERAL**

v.

**V. A. TARLETON.**

**1 Div. 360.**

Supreme Court of Alabama.

June 16, 1966.

Richmond M. Flowers, Atty. Gen., and John D. Bonham, Asst. Atty. Gen., for appellant.

. Garrett & Gilmore, Grove Hill, for appellee.

HARWOOD, Justice.

In the proceedings below the State of Alabama filed a bill in the Circuit Court of Clarke County, Alabama, in Equity, seeking to quiet title to 40 acres of swamp and overflow land theretofore granted to the State by the Federal government.

The facts were stipulated in the court below and show that on 13 January 1894, the Federal government conveyed to the State of Alabama the land in question by a swamp indemnity patent; the records of the Secretary of State's office, and of the Lands Division of the Department of Conservation fail to show that the State of Alabama or its agencies have conveyed its right, title or interest in the land in question to any person, firm, or corporation.

It is further stipulated that V. A. Tarleton claims ownership to said land by a deed from the State Land Commissioner of Alabama, Henry S. Long, approved by Bibb Graves, Governor of Alabama, executed on 2 February 1938, said deed being filed for record in the Probate Office of Clarke County on 25 February 1946.

V. A. Tarleton further claims said land by virtue of the fact that he has assessed said land from the years 1939 through 1965, and has paid the taxes due to State and County during the above years, and has been in continuous use, occupation, and possession of said land since February 1938, and has held the land adversely against all County and State interest, and that for more than 25 years the State has done nothing to assert any title, control, or possession of the said land.

It was further stipulated that the said land was properly advertised and sold to the State of Alabama in the year 1924 for taxes due, and that said land was later advertised in the local newspaper for sale by the State of Alabama, and that V. A. Tarleton made application for the purchase of the same,

and upon his application he was notified by the State Land Commissioner that his application had been received and accepted.

Attached to the stipulation of facts is a copy of the deed made by the State Land Commissioner, Henry S. Long, reciting that on 3 June 1924, the Probate Court of Clarke County, rendered a decree for the sale of the lands described for the payment for State and County taxes due from "Owner Unknown" and under a decree and the sale had in execution thereof, no person having bid a sufficient sum for the lands to pay the taxes, fees, costs, and expenses, the lands were bid in for the State for said taxes, etc.; that the time allowed by law for the redemption of said lands had expired and they having been entered upon the books of the State Land Commissioner, he had, with the approval of the Governor, fixed the price of said lands at $88.00. The deed further recites that application having been made to the State Land Commissioner by V. A. Tarleton to purchase said lands and having paid said sum into the State Treasury, the State Land Commissioner in consideration of the premises, did grant, bargain, sell, and convey to V. A. Tarleton, "without warranty or covenant of any kind on the part of the State, express or implied, all right and title of the State of Alabama in and to said lands, described as follows:

"Northwest Quarter of Northeast Quarter, Section Eight, Township Seven North, Range Three East, lying and being in said County and State to have and to hold the same * * *"

The cause being submitted for final decree, upon the complaint, and answer, and stipulation of facts, the court entered its decree, the pertinent parts of which are as follows:

"* * * the Court is of the opinion that the respondent, V. A. Tarleton, is the owner of the land described in the bill of complaint.

"It is, now therefore, ORDERED, ADJUDGED, AND DECREED by the Court

the respondent, V. A. Tarleton, is the owner of the following described real property:

Northwest Quarter of Northeast Quarter, Section Eight, Township Seven North, Range Three East, Clarke County, Alabama;

that the complainant, the State of Alabama, has no right, title, or interest in or lien or incumbrance upon said lands described above, or any part thereof, and the same is hereby quieted as to it."

From this decree the State of Alabama perfected an appeal to this court.

█ In its argument in support of the decree, counsel for appellant have directed their argument toward the doctrine of equitable estoppel or estoppel in pais.

In State of Alabama ex rel. Atty. Gen. v. Ward, as Administrator, etc., 272 Ala. 646, 133 So.2d 383, the question of whether such doctrine should be invoked against the State of Alabama is thoroughly discussed and analyzed in the dissenting opinion of Justice Goodwyn, who concluded that the doctrine should be applied. However, the view of the majority of the court was that "[a]ssuming, without deciding, that the principle of estoppel is applicable to the State, we are nevertheless of the opinion that the facts and circumstances of this case are not sufficient to justify application of said principle."

We can see no necessity for considering the application of the doctrine of equitable estoppel insofar as the sovereign State of Alabama is concerned, for the following reasons.

By Act No. 540, approved 10 October 1903 (Acts of Alabama 1903, page 495) it is provided that:

"Lands known as swamp and overflowed lands, which are now or may hereafter be owned by the state of Alabama, are granted to the trustees of the Alabama insane hospitals, to be sold or disposed of by such trustees under and by

such rules and regulations as they may see fit to adopt."

This provision appears in our Code of 1907 as Sec. 879, and in our 1923 Code as Section 1486.

Under Sections 189 and 190, Title 45, Code of Alabama 1940, and the precursors of these sections in three prior codes, the Governor and a specified number of trustees, and their successors, are constituted a public corporation with a corporate seal, and the trustees are granted the possession and control of all of the real and personal property belonging to the hospitals, or that may be acquired in any manner in the future; and they are to have the power to sell and convey the real property of the hospitals, and the management and control of the hospitals established by law for the care and treatment of insane persons.

As stated in Opinion of the Justices, 254 Ala. 506, 49 So.2d 175:

"It is well established by the decisions of this court that a public corporation is a separate entity from the state and from any local political subdivision, including a city or county, within which it is organized."

■ It is clear from the legislative enactments establishing the Alabama Hospitals (formerly Alabama Insane Hospitals) that it was the intent of the legislature to set up such hospitals as a public corporation and to vest in the trustees of such corporation the management and control of such hospitals, including the power to sell and dispose of the real property of such hospitals.

■ While it is true that the public corporation set up to operate the Alabama Hospitals is wholly owned by the State, and is an immediate and strict governmental agency of this State, and is in this sense immune from suit under Section 14 of our Constitution (Ex parte Board of School Com'rs. of Mobile County (Daves v. Rain), 230 Ala. 304, 161 So. 108; White v. Alabama Insane Hospital, 138 Ala. 479, 35 So. 454), such fact in no wise presents any rational basis for identifying the public corporation with the State of Alabama in considering whether such corporation can be invested with the title to real property in its separate corporate entity and capacity.

■ The State being the owner of the public corporation known as the Alabama Hospitals, the legislature by act could sell any or all of the properties of the hospital (White v. Alabama Insane Hospital, supra), or the real property could be sold by the Board of Trustees as authorized by the statutes above mentioned. No power existed in any adminstrative or executive official to divest title out of the hospital corporation.

■ The title to the land involved had by the legislature been invested in the Board of Trustees of the Alabama Hospital. The hospitals being a state agency, its lands and properties were not subject to taxation. No taxes being due, the action of the tax assessor in listing the property to "owner unknown" and the later sale of the land for taxes which were not due, and its sale to Tarleton by the Tax Commissioner with the approval of the Governor, cannot be deemed to have divested the Alabama Hospitals of its title to the land.

■■ The State of Alabama has divested itself of title to the land in question by action of the Alabama Legislature. Persons dealing with State agencies of government are presumed to know the legal limitations of their power. City of Birmingham v. Lee, 254 Ala. 237, 48 So.2d 47. We must therefore presume that Tarleton knew that the land in question had been vested in the Alabama Hospitals prior to the faulty tax sale, and that the Tax Commissioner had acquired no interest of any kind as a result of such tax sale and therefore had no interest to convey.

■ From what has been said above, we are in accord with the decree of the lower

court insofar as it adjudges that the State of Alabama has no right, title, or interest in said described lands. We are not in accord with that part of the decree adjudging that V. A. Tarleton is the owner of the lands.

This proceeding was brought under the provisions of Sections 1109–1115, Title 7, Code of Alabama 1940, which pertain to personal proceedings brought to quiet title. Ordinarily, when processed by a private person the complainant must be in peaceable possession of the lands involved in the suit. However, where the State is the complainant the action may be maintained whether or not the State, or any educational or charitable institution wholly or partially supported by it, be in peaceable possession of the lands. Sec. 1115, supra'; Barton v. State, 259 Ala. 285, 66 So.2d 452.

When proceedings are brought to quiet title under the above mentioned code sections, its purposes are as stated in Dake v. Inglis, 239 Ala. 241, 194 So. 673:

"The purpose of the proceeding is *not* to invest the court with jurisdiction to sell or dispose of the title to the land, *but merely to determine and settle the same as between the complainant and the defendants.* Code 1923, § 9908 [Code 1940, Tit. 7, § 1112], Grayson v. Muckleroy, 220 Ala. 182, 124 So. 217; Venable v. Turner, 236 Ala. 483, 183 So. 644.

"Therefore, the fact that there are others who might assert claims to the property, who are not made parties, is not an obstacle to proceeding to a final decree settling the title *as between the parties to the bill.* The decree is only conclusive against such as are made parties and their privies. Grayson v. Muckleroy, supra." (Emphasis ours.)

Actions for the recovery of lands, or the possession thereof, belonging to the State or to certain named agencies of the State, including the Alabama Hospitals, may be brought in the name of the State, or in the name of the State for the use of the named institutions. Sec. 960, Tit. 7, Code of Alabama 1940. And by the provisions of Sec. 16, Tit. 7, Code of Alabama 1940, there is no limitation on the time within which the State may bring actions for the recovery of any of the lands mentioned in Sec. 960, supra.

The fact that Tarleton has been in open, notorious, and peaceable possession of the lands herein involved, and has paid taxes thereon for over twenty-five years, cannot be deemed to have invested title in him as against any claim that a public corporation, an entity separate from the State, may have.

That part of the decree now being considered adjudging that the State of Alabama has no right, title or interest in the land in question is affirmed, and that part of the decree adjudging that V. A. Tarleton is the owner of such land is reversed and hereby remanded.

Affirmed in part, reversed in part, and remanded.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.