MADDOX, Justice.
The issue in this case is whether the grantee violated a condition of a real estate deed so as to cause the title to the property conveyed to revert to and be vested in the heirs of the grantor.
On June 6, 1952, W.A. Powell, a widower, conveyed two forty-acre tracts of land along the rim of Little River Canyon to the Alabama Department of Conservation and Natural Resources (“the Department”). The conveyance culminated a negotiated sale of land to be used as part of a scenic drive along the canyon.
The deed stated in pertinent part:
“TO HAVE AND TO HOLD unto the said Department of Conservation of the State of Alabama, its successors and assigns, forever, except and provided, however, that the land herein conveyed be held, maintained and administered by the said Department of Conservation of the State of Alabama for and as a public road, and for the construction, maintenance and operation of said public road for the sole purpose of providing to the general public aesthetic views of the surrounding area and for state park purposes as may be determined by said Department of Conservation to be for the best interest of the state park system, and for such forms of use and occupancy as may be incidental and contributory to the full accomplishment of such purposes, and that the said land shall not be put to uses incompatible with these purposes; and provided further that should the use of said land for the aforesaid purposes be discontinued at any time for a period of two (2) consecutive years, all right, title and interest herein conveyed shall revert to and be vested in the herein named Grant-or_” (Emphasis added.)
It is undisputed that the Department purchased the entire one-half-mile-long tract and immediately constructed a public road, Little River Canyon Parkway, which runs the entire length of the property and which has been maintained as a scenic parkway since the conveyance. The record reveals that the State has not conveyed or leased the property or built or allowed to be built any structures on the property.
Vernia Taylor, granddaughter of W.A. Powell and administratrix of the estate of George Alfred Powell (the son of W.A. Powell), sought a declaratory judgment against James M. Martin in his capacity as commissioner of the Department to have this conveyance to the Department revert for the alleged failure to comply with the *851 conditions expressed in the deed.[1] She contends that
“the portion of the property not within the banks of the roadway, or at least that portion of the property lying on the West side has reverted to the Grantor’s beneficiaries because of incompatible uses by the State and/or abandonment by the State of the use of the land for the purposes allowed in the deed for more than two years.”
In support of this contention, Taylor presented evidence that her family cut firewood, had hunted, and had once cut timber from the northern half of the land, and paid taxes on the property since “eighteen something” when their grandfather, W.A. Powell, bought the property. Ezell Smith, another of W.A. Powell’s grandchildren, testified that he contacted the Department before the family harvested the timber from the tract along the scenic parkway. He further testified that the State did not raise any objection while they were cutting the timber, and that the State has done nothing on either of the tracts in the past 30 years.
Taylor submits that the State’s failure to regulate the timber cutting, the hunting, and the cutting of firewood constitutes substantial evidence of violation of the conditions set forth in the deed, which would cause a reversion.
In support of its motion for summary judgment, the Department submitted the affidavits of the chief of the engineering section of the Department, Clurin Reed, and the manager of DeSoto Park in DeKalb County, Talmadge Butler. Both Reed and Butler stated that the property has remained in its natural state for aesthetic views of park visitors and has not been used for any other purpose. Butler further stated that the state had made a substantial effort to preserve the property as a natural scenic area for the public. Even Ezell Smith described the property as undeveloped.
The trial court entered a summary judgment for the Commissioner. In its order, the court wrote:
“[T]he Commissioner consented to the cutting of timber on one occasion in 1984. The Court further concludes that W.A. Powell’s heirs have hunted on the property and gathered firewood from the property. However, the Court finds as a matter of law that these facts did not cause a reversion of the property.
“Allowing the cutting of timber on one occasion in 1984 is not sufficient to cause a reversion. Moreover, because there is no evidence that the Commissioner has been aware that W.A. Powell’s heirs have hunted and collected firewood from the property and therefore has not consented to this activity, the Court concludes that this should not cause a reversion of the property.
“The Court holds that it would be inequitable to allow W.A. Powell’s heirs to defeat the conditions of the deed by their actions. Other than the cutting of the timber on one occasion, there is no evidence that the Department has in any other manner permitted the road to be abandoned, or has permitted any persons to use the property in a manner inconsistent with the purposes and conditions in the deed.”
We have examined the record and find that the evidence supports the findings made by the trial judge. The heirs of W.A. Powell have inherited only the possibility of having the property in fee simple; their reversionary interest is subject to a condition subsequent. See 31 C.J.S. Estates § 105 (1964); Sherill v. Sherill, 211 Ala. 105, 99 So. 838 (1924). In this case, the deed specifies that
*852 “the said land shall not be put to uses incompatible with [the sole purpose of providing to the general public aesthetic views of the surrounding area]; ... should the use of said land for the aforesaid purposes be discontinued at any time for a period of two (2) consecutive years, all right, title and interest herein conveyed shall revert to and be vested in the herein named Grantor....”
Consequently, until the contingency happens, that is, until the land is put to uses incompatible with the purpose of providing an aesthetic view of the area, the whole title remains in the grantee, the Department.
In general, the law disfavors conditions subsequent in conveyances because they tend to the destruction of estates. Stewart v. Weaver, 264 Ala. 286, 87 So.2d 548 (1956). As early as 1884, the Court recognized the settled rule “that such conditions are generally to be construed stric-tissimi juris, against the grantor in the deed creating them.” Henry v. Etowah County, 77 Ala. 538 (1884). In that case, the conditions subsequent incorporated in the deed were that whenever the county ceased to use the lot for courthouse purposes, and whenever the courthouse was removed from the lot, the property reverted to the grantor. The alleged “perversions of use” were that the county left a portion of the lot unenclosed by fencing, and erected two hitching posts and a structure for posting circus bills. The Court noted that “what is meant by the phrase ‘court-house purposes,’ within the intention of these parties, we need not attempt to define_ No mere incidental and collateral use, to which the lot in question may be temporarily devoted, which does not conflict or interfere with its use ... can be construed to be a breach of the conditions of the deed.”
Bearing this in mind, construing the deed “strictissimi juris,” we have searched the record for the proof necessary to show that, as a matter of law, the property reverted to W.A. Powell’s heirs. We found no evidence of such probative force that would show that the condition subsequent has occurred. Those uses that the appellant argues are inconsistent with the mandates of the deed, hunting, gathering firewood, and the isolated incident of cutting timber, do not amount to a violation of the conditions of the deed. In fact, those isolated uses do not conflict or interfere with the goal of the Department to preserve the area in its natural state.
The appellant argues in her brief that there is a “considerable amount of other evidence of incompatible uses and or abandonment by the state for more than two years” and cites the following:
“1) evidence [that] the State has done nothing on either one of the tracts in the past 30 years; 2) evidence that the State has made no use of the property nor regulated or supervised or controlled its use; 3) evidence that the State has made no substantial effort to maintain it in its natural state; 4) evidence that George Alfred Powell, Matilda Smith, and the sons and daughters of Matilda Smith have all executed conveyances to parts of the property; 5) evidence that the Powell family has possessed the property, claimed it, and treated it as their own since at least 1954; and 6) evidence that the Powell family has paid taxes on the property since the 1800’s when Mr. W.A. Powell bought it.”
The first three pieces of “evidence” do not support Taylor’s argument, but only reinforce the Department’s determination that the best use of the land would be to leave it in its natural state. The fourth and fifth pieces of “evidence” seem to imply an adverse possession argument. “There is abundant authority in this State for the proposition of law that title cannot be acquired by adverse possession of land owned by the State or a county.” State ex rel. Attorney General v. Tarleton, 279 Ala. 555, 188 So.2d 516 (1966); Nixon v. City of Anniston, 219 Ala. 219, 121 So. 514 (1929); Jefferson County v. McClinton, 292 Ala. 285, 293 So.2d 294 (1974). Finally, the heirs of Powell cannot claim title because of their payment of taxes. See Tarleton.
We further hold that the trial judge could have found that the grantor intended *853 that the Department could determine what use and occupancy of the land would be in the best interest of the development of the state park. The Department determined that preserving the property in its natural state would provide the public with the aesthetic view envisioned by W.A. Powell.
The evidence shows that the Department has never at any time ceased to use the property; in fact, the Department made a concerted effort no to disturb the property, consistent with its objective that the aesthetic view would best be preserved by keeping the area around the parkway in its natural state. These isolated incidents of hunting, gathering firewood, and cutting timber, do not interfere with the uses as set forth in the deed.
The cases in which we have held that the property reverted to the heirs of the grant- or contain clear evidence of a breach of the conditions of the deed. For example, in Mt. Gilead Church Cemetery v. Woodham, 453 So.2d 362 (Ala.1984), the deed included the condition “It is expressly agreed that if the said Mt. Gilead Church should cease to exist as a church of the Primitive Baptist faith and order, the said lot of land shall revert back to original tract.” The church building was later destroyed in a storm, and it not been used for church services for several years prior to the storm. The defendants noted that a cemetary remained on the church property, and argued that “the cemetary was an integral part of the church, and thus ... the title conveyed to the Mt. Gilead Church continues in existence.” This Court rejected that argument, and held that “upon the expiration of the church, the property reverted to [the grant- or’s] heirs.”
In the present case there is no clear evidence of a breach of the conditions of the deed. Consequently, the trial court properly found that no reversion occurred.
AFFIRMED.
HORNSBY, C.J., and HOUSTON, KENNEDY and INGRAM, JJ., concur.

. W.A. Powell had two children, George A. Powell and Matilda Smith. Upon his death, W.A. Powell willed his interest in the southeast fourth of the northwest fourth of this same property to his son, George. George sold his interest in the northeast fourth of the northwest fourth of that property to his sister, Matilda. In 1984, Matilda deeded that property to her children, Ezell, Mack, Shirley, and Gaynell, jointly, as tenants in common.
The deed George made to his sister did not include the property in the southeast fourth of the northwest fourth. Taylor’s affidavit states that her family has possessed the property, claimed it, and treated it as their own since 1954.