This case involves an alleged breach of warranty of title to certain land in Baldwin County, Alabama. Based on an alleged defect in a deed description (that defect concerning a strip approximately 30 feet wide along the west boundary of the land), Driftwood Landing, Inc. ("Driftwood"), the subsequent grantee of the property in question, sought a declaratory judgment and equitable relief against Margaret Griggs, individually and as executrix of the estate and last will and testament of W. Garrett Griggs. The Griggses were joint owners of this property and conveyed it to Thomas C. Adams and Ethel C. Adams, jointly, from whom Driftwood purchased the property.
The trial court granted the relief sought by Driftwood, finding a breach of the warranty of title given in the warranty deed from the Griggses to the Adamses. The trial court also held that a proportionate reduction in the purchase price of the property *Page 584 
was appropriate relief for the defect. Applying this reduction to the balance of a promissory note, which the Adamses had executed in favor of the Griggses in exchange for the property and which Driftwood had assumed, the trial court held that no balance was owing on the note. Margaret Griggs appeals, individually and as executrix of the estate of W. Garrett Griggs. We affirm.
 FACTUAL BACKGROUND
The dispute over the approximately 30-foot strip of the property had its origin in a deed dated April 19, 1941, from Thekla McPhaul and A.B. McPhaul to the Department of Conservation of the State of Alabama. That deed conveys to the State a strip of land 330 feet in width east of the west boundary line of Section 9, Township 9 South, Range 5 East, in Baldwin County, which is on the north shore of Cotton Bayou, near Orange Beach. That deed contains the following condition:
 "The above described land is conveyed to the Grantee [State] for the purpose of a State park or State parkway and said land is to be used exclusively for such purposes. In the event that said land is not used for said purposes at any time for a period of five consecutive years, all right, title, and interest herein conveyed shall revert to the Grantor [the McPhauls]."
In September 1944, the McPhauls conveyed to Amos Garrett a separate parcel of land located east of and adjoining the land the McPhauls had conveyed to the State. The McPhauls also transferred to Garrett any reversionary interest they had in the property conveyed to the State.
By plat dated July 18, 1946, Amos Garrett dedicated "Garrett Subdivision," which included property conveyed to him by the McPhauls and adjoining the property conveyed to the State. Garrett conveyed the lots in question to Neil Lauder in 1946, who sold them to the Griggses in 1968. These conveyances described the property according to the plat map. The subdivision plat indicates that the west boundary of the Garrett Subdivision lies only 300 feet east of the west boundary of Section 9, whereas the McPhaul deed to the State indicates that the property could not be located closer than330 feet east of the west boundary of Section 9. Therein lies the claimed defect in the title to Lot 1 of Block 1 and Lot 1 of Block 2, of Garrett Subdivision.
The evidence at trial revealed that this problem was caused by a disagreement among surveyors concerning the true location of the west line of Section 9. Two different points were used as section corners by the surveyors to describe the west section line, and, thus, the west line of the property in question. Margaret Griggs admits on appeal that an "overlap" exists between the land as described in the deed to the State and the western portion of the lots the Griggses conveyed to the Adamses. Griggs, however, invokes the reversion clause in the McPhaul deed to the State, and she claims that application of that clause cures any defect in the property description. A map showing the location of the lots and of this "overlap" is attached as an appendix.
On November 5, 1982, the Griggses conveyed the property in question to Adams by warranty deed. As consideration for the property, the Adamses paid $50,000 down and executed to the Griggses a $100,000 promissory note, which was secured by a grantor's lien on the property. When the Adamses sold the property to Driftwood on October 11, 1983, Driftwood assumed the promissory note.
When Driftwood discovered the alleged defect, it hired a surveyor to examine the west boundary. The surveyor determined that the property was "short" on the west side. Driftwood then entered into a boundary line agreement with the State to solve the dispute, so that it could receive approval of its development plans from the Baldwin County Planning Commission and could proceed with its planned development of this land. Under this agreement, Driftwood ceded a strip of land 21.03 feet wide, measured east-west, along the west boundary *Page 585 
line.[1]
Driftwood sued the Griggses on September 5, 1984, seeking equitable relief for breach of the warranty of title contained in the deed to the Adamses. Driftwood sought a declaratory judgment determining the amount due the Griggses on the promissory note. Driftwood also sought a proportionate reduction in the purchase price of the property (i.e., a reduction in the price proportionate to the amount of land lost because of the breach of warranty of title); it argued that the amount of the reduction in price should be taken as a credit on the balance of the note. Further, Driftwood sought injunctive relief to cancel the grantor's lien on the property held by the Griggses.
On the same day, the trial court entered an ex parte order granting Driftwood the temporary relief sought. The trial court's order canceled the Griggses's grantor's lien, upon Driftwood's posting of a $125,000 bond; it posted such a bond by letter of credit issued by Sunbank/West Florida, N.A.
That letter of credit eventually lapsed, and Griggs filed a counterclaim against Driftwood, alleging that it had failed to post an irrevocable letter of credit as required by the trial court's order and seeking a judgment declaring that the remaining provisions of the trial court's order did not cancel the grantor's lien held by the Griggses. Griggs also sued Sunbank, alleging that it must post a currently valid bond; Griggs also sued the Adamses, seeking a money judgment for the amount due under the promissory note.
While the litigation progressed, Driftwood constructed condominiums on the property and sold the condominium units to individual purchasers. Driftwood gave Sunbank a mortgage on the property to secure Sunbank's construction loan to Driftwood in the amount of approximately $600,000. As a result, this case involves Sunbank; AmSouth Bank, which had taken mortgages from some individual purchasers of the condominium units; and the individual condominium unit owners. These parties have cross-appealed as a precautionary measure. If this Court reverses the trial court's order, then these parties argue that they are not subject to any liability arising from the alleged defect in title. Sunbank also argues that it has no continuing liability on the letters of credit it issued on behalf of Driftwood.
From September 5, 1985, when the court entered the initial order, until January 16, 1992, the parties filed pleadings and motions and conducted discovery. During this time, Margaret Griggs, as executrix of the estate of W. Garrett Griggs, was substituted in place of W. Garrett Griggs in this action on October 31, 1990. All parties filed motions for summary judgment, and the trial court heard arguments on these motions. On January 16, 1992, the trial court granted Griggs's motion for summary judgment, holding that the grantor's lien retained by the Griggses in the deed to the Adamses remains in full force and effect. The trial court also entered a summary judgment for Sunbank, holding that it had no continuing liability on the letter of credit it had issued.
On June 22, 1992, after an ore tenus hearing on all remaining issues, the trial court entered an order holding that there had been a breach of warranty of title given in the conveyance by the Griggses to the Adamses and that the appropriate equitable relief was a reduction in the purchase price. Applying this reduction, the trial court held that Griggs had already been paid what she was due under the promissory note, and that nothing more was due on the note. The trial court, thus, held that the note had been satisfied and that the grantor's lien was, accordingly, extinguished. It is from this judgment that Griggs appeals. *Page 586 
Griggs raises two issues on appeal. Generally, she argues that the trial court's holding was clearly erroneous and against the great weight of authority. First, she argues that the trial court erred in failing to give effect to the reversion clause in the McPhauls' 1941 deed to the State. Second, she argues that, if this Court upholds the trial court's determination that a defect in title does exist, then the trial court erred in determining the amount for which Griggs is liable.
This was a nonjury case. Where the trial court hears oretenus evidence, a presumption of correctness exists as to the court's findings of fact based on that ore tenus evidence; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.Gaston v. Ames, 514 So.2d 877, 878 (Ala. 1987); Cougar MiningCo. v. Mineral Land Mining Consultants, Inc., 392 So.2d 1177
(Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra; Smith v. StyleAdvertising, Inc., 470 So.2d 1194 (Ala. 1985); League v.McDonald, 355 So.2d 695 (Ala. 1978).
 I. REVERSION CLAUSE
Griggs argues that the trial court improperly failed to give effect to the reversion clause contained in the deed from the McPhauls to the State. She argues that the State failed to comply with the requirement in the deed that the state to use the property "for the purpose of a state park or state parkway," and that this failure caused a reversion of title, in favor of her, as the ultimate successor in interest to Amos Garrett, to whom the McPhauls had assigned this reversionary right. She argues that the trial court's failure to give effect to the reversionary clause is clearly erroneous and against the great weight and preponderance of the evidence.
Griggs admits that there is an "overlap" of 30 feet between the parcel described in the State's deed and that parcel described in Driftwood's deed. However, she argues that the State did not use the land "as a state park or state parkway." In support of this argument, Griggs relies on evidence that the plats in the office of the Baldwin County tax assessor reveal that, at all times between 1946 and 1983, the owners of the lots within the Garrett subdivision had paid taxes on the full 100-foot width of those lots, rather than on the lesser width that they should have been paying taxes on if the State had title to the disputed 30-foot strip. However, this evidence provides no support for her arguments. Neither Griggs nor others owning the lots could claim title to the 30-foot strip because of their payment of taxes. State ex rel. AttorneyGeneral v. Tarleton, 279 Ala. 555, 188 So.2d 516 (1966).
Griggs also refers to evidence that while the Griggses and Neil Lauder, a previous owner, owned the lots, they used the 30-foot strip and that the State did not use it. She argues that their acts of possession demonstrate that the State has not used the land as "a state park or state parkway," within the meaning of the reversion clause.[2]
Griggs relies on this Court's holding in Trustees of HowardCollege v. McNabb, 288 Ala. 564, 573, 263 So.2d 664 (1972), for the proposition that a "parkway" must be used " 'for the benefit of the public' at large, and [must be] open for the use and enjoyment of everyone, rather than for the use of those few individuals who own adjoining property." Griggs argues that the disputed strip in this case was used only for the benefit of the abutting landowners and not for the benefit of the public at large.
In McNabb, a similar condition was inserted in a deed to Jefferson County, Alabama; *Page 587 
the property conveyed contained a lake, and the deed required that the "said property be used as a parkway only."Id. 288 Ala. at 568, 263 So.2d at 667. Jefferson County agreed "to beautify and use the property hereby conveyed as such a parkway." Later, the lake was drained and Jefferson County conveyed the land to the Trustees of Howard College (now Samford University), who, the original grantors argued, did not maintain it as a "parkway." Construing the term "parkway," this Court relied on a prior decision dealing with the meaning of the word "parkway" and defining the term as follows:
 "It is entirely within the functions of the city to provide sidewalks for pedestrians and a separate zone for vehicles, outlined by curbs, and to establish a zone or parkway between the two for ornamentation with grass or flower pots, trees and shrubs, a city beautiful feature, for the benefit of the public and abutting owners. . . ."
McCraney v. City of Leeds, 239 Ala. 143, 145, 194 So. 151, 152
(1940) (Emphasis added.)
Applying the definition used in McNabb, this Court held that where no public dedication of the lake had been made and where abutting landowners had been allowed to use the lake for their benefit and enjoyment, but where no private easement or reservation in the lake was created, the trustees of Howard College had not complied with the requirement. McNabb,288 Ala. at 574, 263 So.2d at 673. Accordingly, this Court gave effect to a reversion clause, which caused title to revert to the original grantor. Id.
This Court has also held that the State is not required to construct facilities or park-like features on property to meet a deed requirement that the State use the land "for state park purposes." Taylor v. Martin, 585 So.2d 849, 850 (Ala. 1991). Where the State preserved the property in its natural state to provide the public with an aesthetic view, this was sufficient to meet the requirement in the deed and thus prevent the operation of the condition subsequent.
Furthermore, this Court has adhered to the general rule of law that disfavors conditions subsequent in conveyances of real property because they tend to the destruction of estates.Taylor v. Martin, 585 So.2d 849, 852 (Ala. 1991); Stewart v.Weaver, 264 Ala. 286, 87 So.2d 548 (1956). See also Burnham v.City of Jackson, 379 So.2d 931, 933 (Miss. 1980). Accordingly, this Court strictly construes such conditions against the grantor. Taylor, 585 So.2d at 852; Henry v. Etowah County,77 Ala. 538 (1884) (conditions subsequent "are generally to be construed strictissimi juris, against the grantor in the deed creating them").
We find evidence to support the trial court's finding that the State's use of the land substantially complied with the condition. See 4 G. Thompson, Commentaries on the Law of RealProperty § 1890 (1979) (substantial compliance). There was evidence that the State used the disputed strip in its construction of State Highway 161 in 1945, as a "buffer" between the pedestrian and residential zones and the vehicular zone along Highway 161, and as property reserved for possible future expansion of that road. Indeed, evidence indicated that the State has expanded Highway 161 by approximately six to eight feet and that it has added a bicycle lane alongside the highway, and that these additions expanded onto 30-foot strip in dispute here. Furthermore, Griggs acknowledges that Highway 161 runs north and south alongside the disputed strip of land, directly to the west of that strip, and that Gulf State Park is located directly to the west of Highway 161. It is also undisputed that the construction of Highway 161 was for the benefit of the public.
The trial court's holding also complies with the law regarding reversionary clauses. Using the definition of "parkway" recommended by Griggs, and upon which this Court relied in McNabb, we hold that the evidence was sufficient to permit the trial court to infer that the State had used the disputed strip in substantial compliance with the deed requirement. The State's use of the property, therefore, does not *Page 588 
invoke the condition subsequent. Accordingly, the trial court's holding was not clearly erroneous or against the great weight of the evidence.
 II. MEASURE OF DAMAGES
Griggs argues that, if the trial court properly found a defect in title, then it did not apply the proper measure of damages. Regarding the measure of damages, the trial court stated:
 "(a) That Driftwood Landing, Inc., hereinafter, 'Driftwood,' has been damaged as a result of [a] breach of warranty of title by W. Garrett Griggs and Margaret Griggs . . . and that there was a 25.81% deficiency in the amount of property conveyed. Therefore, there should be a 25.81% reduction in the purchase price of $150,000.00, leaving a purchase price of $111,285.00, less the down payment of $50,000.00, leaving an amount to be financed of $61,285.00 at 12% per annum. Driftwood paid the sum of $81,770.95 from November 5, 1983, through November 5, 1987, and thereafter Driftwood ceased to make payments.
 "(b) After restructuring the financing and thereby giving Driftwood credit for the 25.81% reduction of the purchase price, Griggs was entitled to receive $81,770.95 in principal and interest, which is the amount received by Griggs. Therefore, Griggs' claims [based on a claim of default on the promissory note] are due to be dismissed and all other claims are therefore moot."
Griggs contends that the trial court applied an improper measure of damages. Griggs relies on Alger-Sullivan Lumber Co.v. Union Trust Co., 207 Ala. 138, 92 So. 254 (1922), to argue that Driftwood, in order to receive a proportionate reduction in the purchase price, must rescind the sale and tender the defective title back to her, as one of the grantors and as executrix of the estate of W. Garrett Griggs, the other grantor, so that she can defend it. Griggs argues that because Driftwood has effectively transferred the disputed strip to the State without her consent, title cannot be tendered to her and that a reduction in the purchase price is therefore not available.
This case is unlike Alger-Sullivan, however, in that the grantees in Alger-Sullivan, sought a refund of the entire
purchase price of the property because of a partial failure of title. This Court held that where a conveyance provides for a refund of the entire purchase price in the case of "each acre of land the title to which shall fail," meaning a total failure of title, the purchaser was not entitled to recover the entire purchase price for a partial failure without offering to return the land. The facts of this case are clearly distinguishable. Driftwood does not contend that a failure of title occurred as to the entire 100-foot lot, and it does not seek a refund of the entire purchase price. Driftwood is not required to tender back to Griggs the title in order to receive a proportionate reduction in the purchase price for a partial failure of title.
Griggs next argues that the proper measure of damages is the difference in the value of the property as warranted and the value of the property with the defect. From a careful review of the record, we conclude that the trial court applied this precise measure of damages.
The trial court relied on competent evidence to support its finding of the amount of damages. Griggs testified that 25.81 feet of beachfront property was lost as a result of the defect. She further testified that beachfront property was worth approximately $1,000 per foot when she and W. Garrett Griggs sold the property to the Adamses.[3]
We conclude that the trial court applied the proper measure of damages. The trial court's calculations are clearly based on the difference in the value of the property as *Page 589 
represented ($150,000 for a 100-foot lot) and the value of the property as it really was ($111,285 for a 74. 19-foot lot).
Griggs's final argument focuses on a limit to the damages Driftwood may recover. Griggs argues that in no event may the damages awarded exceed the sale price of the property. St. PaulTitle Ins. Corp. v. Owen, 452 So.2d 482 (Ala. 1984). The damages awarded in this case did not exceed the sale price of the property.
The trial court's judgment is affirmed; the issues raised in the cross-appeals are thereby rendered moot.
1911596 — AFFIRMED.
1911653 — DISMISSED.
1911673 — DISMISSED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] The agreement measured east-west the property ceded. However, the northern and southern boundaries run northeast-southwest, so that those boundary lines are longer than the east-west measurement across the center of the land. The southern boundary of the property is the shoreline. That shoreline boundary, like the northern boundary, is 25.81 feet long. See the map attached as an appendix.
[2] Griggs does not argue that Lauder or the Griggses obtained title to the land by adverse possession against the State. "There is abundant authority in this State for the proposition of law that title cannot be acquired by adverse possession of land owned by the State or a county." Taylor v. Martin,585 So.2d 849, 852 (Ala. 1991).
[3] Although there is some authority suggesting that damages measuring the difference in value as represented and as is should be measured "as of the date of eviction, [and] not as of the time of the sale," Driftwood did not at trial raise this argument and does not on its cross-appeal contend that it is due more in damages than the trial court awarded. See Lacks v.Stribling, 406 So.2d 926, 929 (Ala.Civ.App. 1981), cert.denied, 406 So.2d 932 (Ala. 1981). Therefore, we are limited to reviewing the trial court's use of the measure of damages as of the time of sale. *Page 590 
 APPENDIX
[EDITORS' NOTE: The figure IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 591