The First Baptist Church of Bay Minette ("the Church") and Margaret Ann *Page 198 
Boone Redden and Kyle Redden, by two complaints, sued the State of Alabama, naming as defendants the Alabama Department of Conservation; James E. Martin, commissioner of the Department of Conservation; and Governor Fob James (referred to as "the State"). The plaintiffs sought to quiet title to two noncontiguous parcels of land in Baldwin County and sought a judgment declaring that title to those parcels had reverted to them as successors in interest. The case was tried without a jury, on the issue whether the State had used the parcels in a way that would trigger the reversionary clause contained in the deeds granting the lands to the State. The court entered a judgment holding that the title had not reverted, but remained in the State. Both the Church and the Reddens appealed. We affirm.
The Church and the Reddens filed separate complaints against the State on September 24, 1998. Each complaint contained two counts; the counts in one complaint were identical to those in the other complaint. The Church's count one sought a judgment declaring that the title to the real property that was the subject of the Church's complaint had reverted to the Church's successor in interest, and the Reddens' count one sought a judgment declaring that the title to the parcel that was the subject of the Reddens' complaint had reverted to the Reddens. Count one of each complaint further "requested" that the State be directed to execute an appropriate document and to record it in the records in the probate court, acknowledging the reversion and quitclaiming or disclaiming any further interest in the property. Count two of the Church's complaint sought to quiet title to the one parcel in the Church, and count two of the Reddens' complaint sought to quiet title to the other parcel in the Reddens.
The State answered each complaint on November 16, 1998, denying the material allegations of the complaint and asserting the affirmative defenses of laches, unclean hands, and the statute of limitations. The court directed that the two cases be tried together, and it scheduled a nonjury trial for July 30, 1999. The parties submitted a joint stipulation of material facts, with attached exhibits. The following facts were included in the joint stipulation:
 "1. The First Baptist Church of Bay Minette (`the Church') derives its claim of title to its property situated in Section 5, Township 9 South, Range 5 East in Baldwin County, Alabama, by virtue of an instrument dated October 23, 1996 and recorded in Real Property Book 717, page 1154, in the Probate Records of Baldwin County, Alabama. A true and correct copy of the instrument whereby the Church derives its claim of title is attached hereto, incorporated by reference and marked as Exhibit "1".
". . . .
 "3. The property claimed by the Church was previously owned by D.R. Peteet and Dorothy High Peteet, husband and wife, who conveyed said land to the Alabama State Commission of Forestry, a previous division of the Department of Conservation and Natural Resources, by instrument dated April 15, 1941, and recorded in Deed Book 75, page 251, in the Probate Records of Baldwin County, Alabama. Said deed from Peteet to the Alabama State Commission of Forestry contained the following reversionary language:
 "The above-described land is conveyed to the Grantee for the purpose of a State park or State parkway and said land is to be used exclusively for such purposes. In the event said land is not used for said purpose at any time for a period of five (5) consecutive *Page 199 
years, all right, title and interest herein conveyed shall revert to the grantor.
 "A copy of the deed from Peteet to the Alabama State Commission of Forestry is attached hereto, incorporated by reference and marked as Exhibit "3". Said property appears as Parcel "K" on the attached exhibit.
". . . .
 "5. Both [the] parcel of land claimed by the Church and [the parcel claimed] by the Reddens lie immediately west of and adjacent to Alabama highway No. 161 in the municipal limits of the City of Orange Beach, Alabama. Neither the Church property nor the Redden property have ever consisted of any improvements of any nature, said parcels having remained unimproved at all times since the conveyance of said properties pursuant to Exhibits "3" and "4" attached hereto. At all times since 1996, the Church has assessed [the] property for taxes in the name of the First Baptist Church of Bay Minette, Alabama. No taxes have been paid by the Church due to its exemption from ad valorem taxation as a religious institution.
". . .
 "7. The property lying immediately north of the Redden property, and situated in the Northeast Quarter of section 5, Township 9 South, Range 5 East, has been occupied, for a period of approximately five (5) years by a Tom Thumb Convenience Store and other associated office and retail space.
 "8. The property lying immediately south of the Church property and adjacent to the west right-of-way line of Alabama Highway No. 161 was previously adjudicated by the Circuit Court of Montgomery County, Alabama, to be privately owned by the individual owners of said property, free and clear of any claim held by the State of Alabama or any of its various departments and agencies by virtue of the conveyance from Joseph Minthorn and Allie Minthorn to the Department of Conservation of the State of Alabama dated May 3, 1941, and recorded at Deed Book 75, page 252, in the Probate Records of Baldwin County, Alabama. Said parcel appears as Parcel `A' on the attached exhibit. Said claim was resolved in favor of the individual property owners in Bachar v. Guy Hunt, CV-88-671-G in the Circuit Court of Montgomery County, Alabama, by virtue of a final decree entered by Circuit Judge William Gordon on or about July 12, 1990. The instrument at issue in the prior Montgomery County litigation was the same instrument which described the property now claimed by the Reddens and lying in the East Half of the Northeast Quarter of Section 5, Township 9 South, Range 5 East in Baldwin County, Alabama.
 "9. Alabama Highway No. 161 was built in 1945 and has been in continuous use as a public road since that time.
 "10. Since 1945, the Alabama Highway Department has maintained the roadway and right-of-way by making repairs to the roadway and by mowing the adjacent right-of-way."
During the bench trial on July 30, 1999, the trial court heard the testimony of two witnesses. Thomas E. Mitchell, a representative of the Church, testified that he was 52 years old, had lived in Gulf Shores his whole life, and had never seen or had knowledge of anyone using the two parcels in question. Hugh Branyon, the park superintendent at Gulf State Park, testified that the Park decided to leave the two parcels of land in their natural state for aesthetic value and that the State had merely kept the grass cut and kept signs *Page 200 
off the land. The Church and the Reddens submitted a posttrial brief with exhibits, on September 20, 1999. At some point not specified in the briefs or in the record, the trial judge and the lawyers for the parties visited the property and viewed it. The trial court entered a judgment on August 9, 2000, denying the plaintiffs' claims and concluding that the State was the "owner in fee simple" of the disputed properties.[1] In pertinent part, the judgment states:
 "3. The plaintiffs, who are successors in interest to the original grantors, claim that the subject property has reverted to the original grantors because of the failure of [the Department of] Conservation to use the subject property as a State Park or Parkway. It is undisputed that no structures, facilities, or park-like features have been built by Conservation or anyone else on the disputed property. In fact, no improvements of any kind (other than expansions of Highway 161) have been made to the property and it has been left in its natural state.
 "4. The parties stipulated that in Bachar v. Guy Hunt, CV-88-671-G, the Circuit Court of Montgomery County held that property immediately south of the First Baptist Church's claim had reverted to the original grantor. The plaintiffs failed, however, to show that the facts and issues in that case have application to the present case. In fact, Hugh Branyon, who has been superintendent of Gulf State Park for twenty-four years, testified and the court observed that the property involved in the Bachar case had buildings or other structures located on [it] which is clearly not the case with the property involved in this lawsuit.
 "5. The testimony of Hugh Branyon revealed that it was the deliberate decision of Conservation to leave the subject property in its natural state and to provide the public with an aesthetic view.
 "6. Several parcels of Gulf State Park land are not contiguous to each other.
 "7. A portion of the disputed property has been condemned by the Alabama Department of Transportation for expansion of the right-of-way and in widening of Highway 161 and the proceeds of that condemnation are presently being held in the probate court of Baldwin County, Alabama pending the outcome of the present case.
 "8. The construction of Highway 161 in the 1940s was for the benefit of the public."
The trial court then considered the law as set out by this Court inGriggs v. Driftwood Landing, Inc., 620 So.2d 582 (Ala. 1993), and Taylorv. Martin, 585 So.2d 849 (Ala. 1991). It concluded that Griggs andTaylor required a judgment holding that title to the two parcels had not reverted. The court entered such a judgment in each case. The Reddens and the Church appealed, separately. The issue in each appeal is whether the trial court correctly applied the law to the facts of this case.
 Standard of Review
This Court has written:
 "Where ore tenus evidence is presented to the trial court in a nonjury case, a judgment based on that evidence is presumed to be correct and will not be disturbed on appeal unless a consideration of the evidence and all reasonable inferences therefrom reveals that the *Page 201 
judgment is plainly and palpably erroneous or manifestly unjust."
Bertolla v. Bill, 774 So.2d 497, 503 (Ala. 1999); Cale v. City ofBessemer, 393 So.2d 959 (Ala. 1980). However, as in this case, when a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts. Home Indem. Co. v. Reed Equip. Co., 381 So.2d 45 (Ala. 1980). "In addition, the ore tenus presumption is further strengthened in a case involving a dispute over real property, where the trial judge views the land in question." Hereford v. Gingo-Morgan Park, 551 So.2d 918,920 (Ala. 1989), citing McCollum v. Reaves, 547 So.2d 433 (Ala. 1989). Accordingly, because the evidence before the trial court in this case consisted of a stipulation of facts, the testimony of one witness for the plaintiffs and one for the State,[2] and the judge's personal observations of the property, we review the judgment without a presumption of correctness.[3]
There is no dispute that the State has intentionally left the property in an undeveloped condition, for aesthetic purposes. We therefore consider whether the trial court properly applied the law to this situation. The trial court based its judgment on this Court's decisions in Griggs, supra, and Taylor, supra. In Griggs, this Court considered whether a strip of land located along Highway 161 in Orange Beach had reverted to the original grantor pursuant to a reversionary clause, which was almost identical to the reversionary clause in this case. The reversionary clause in Griggs provided:
 "The above described land is conveyed to the Grantee [State] for the purpose of a State park or State parkway and said land is to be used exclusively for such purposes. In the event that said land is not used for said purposes at any time for a period of five consecutive years, all right, title, and interest herein conveyed shall revert to the Grantor [the McPhauls]."
620 So.2d at 584.
The grantors' successors in Griggs argued, as the plaintiffs argue in the instant case, that the State had done nothing with the property and therefore had lost title, under the reversionary clause. The Griggs Court cited Taylor, supra, for these propositions:
 "[T]he State is not required to construct facilities or park-like features on property to meet a deed requirement that the State use the land `for state park purposes.' Taylor v. Martin, 585 So.2d 849 (Ala. 1991). Where the State preserved the property in its natural state to provide *Page 202 
the public with an aesthetic view, this was sufficient to meet the requirement in the deed and thus prevent the operation of the condition subsequent.
 "Furthermore, this Court has adhered to the general rule of law that disfavors conditions subsequent in conveyances of real property because they tend to the destruction of estates. Taylor v. Martin, 585 So.2d 849, 852 (Ala. 1991); Stewart v. Weaver, 264 Ala. 286, 87 So.2d 548 (1956). See also Burnham v. City of Jackson, 379 So.2d 931 (Miss. 1980). Accordingly, this Court strictly construes such conditions against the grantor. Taylor, 585 So.2d at 852; Henry v. Etowah County, 77 Ala. 538 (1884) (conditions subsequent `are generally to be construed strictissimi juris, against the grantor in the deed creating them')."
Griggs, 620 So.2d at 587. The Griggs Court further noted that even though the State was not required to construct anything on the land, the State had used the property as a buffer zone between pedestrian and residential areas. Thus, this Court concluded that the State's action in maintaining the land in its natural state was consistent with the requirement of the reversionary clause.
In Taylor, supra, this Court was required to determine whether the State had acted in such a way as to allow the operation of a reversionary clause contained in a deed granting land to the Department of Conservation. In Taylor, W.A. Powell conveyed two 40-acre tracts to the State in a deed containing a clause that read:
 "TO HAVE AND TO HOLD unto the said Department of Conservation of the State of Alabama, its successors and assigns, forever, except and provided, however, that the land herein conveyed be held, maintained and administered by the said Department of Conservation of the State of Alabama for and as a public road, and for the construction, maintenance and operation of said public road for the sole purpose of providing to the general public aesthetic views of the surrounding area and for state park purposes as may be determined by said Department of Conservation to be for the best interest of the state park system, and for such forms of use and occupancy as may be incidental and contributory to the full accomplishment of such purposes, and that the said land shall not be put to uses incompatible with these purposes; and provided further that should the use of said land for the aforesaid purposes be discontinued at any time for a period of two (2) consecutive years, all right, title and interest herein conveyed shall revert to and be vested in the herein named Grantor. . . ."
Taylor, 585 So.2d at 850.
Powell's heirs attempted to argue that because they had used the property for hunting and cutting firewood, and because they had paid taxes on the property and had sold some of the timber, the State had failed to meet the conditions necessary to avoid the operation of the reversionary clause. The trial judge found that the State had not met the conditions, because the State had left the land in its natural state, according to the wishes of Powell, and, the Judge felt, it would be unfair to allow the actions of Powell's heirs to defeat the State's ownership. In reviewing the judgment, this Court noted the rule that conditions subsequent should be construed strictly against the Grantor. See Henryv. Etowah County, 77 Ala. 538 (1884). The Court concluded that the actions of Powell's heirs did not negate the fact that the State had used the land in a manner consistent with the deed. The Court went on to state: *Page 203 
 "We further hold that the trial judge could have found that the grantor intended that the Department could determine what use and occupancy of the land would be in the best interest of the development of the state park. The Department determined that preserving the property in its natural state would provide the public with the aesthetic view envisioned by W.A. Powell.
 "The evidence shows that the Department has never at any time ceased to use the property; in fact, the Department made a concerted effort [not] to disturb the property, consistent with its objective that the aesthetic view would best be preserved by keeping the area around the parkway in its natural state."
Taylor at 852-53.
The Church and the Reddens argue that the facts of their cases are distinguishable from the facts of Griggs and Taylor and that in these two cases the trial court misapplied the law from those previous cases. Their argument is that the discussion of "State park" or "State parkway" inGriggs is not applicable to this present situation and that this Court should, instead, look to § 9-14-1(1) and (3), Ala. Code 1975, which provide the following definitions:
 "(1) PARK. Any area of land primarily valuable for recreational purposes because of its scenic, historic, prehistoric, archaeologic, scientific or other distinctive characteristics or nature features."
 "(3) PARKWAY. Any elongated strip of land suitable for recreation and a pleasure vehicle road to which the owners or lessees of abutting property shall have no right of direct access."
The Church and the Reddens argue that these Code provisions require the State to provide recreational facilities in order to use the land as a park, and that, because the State has, in their words, "done absolutely nothing" on the subject property, the reversionary clause (calling for a reversion if the parcels were not used for a state park or a parkway) was involved. However, the statutory definitions relied on by the plaintiffs do not place a duty on the State, nor do they conflict with the State's use in this case. The State used the two parcels by allowing them to remain in their natural state for aesthetic value, and the judgment in this case finding that use to be a proper use within the terms of the deeds is consistent with this Court's decisions in Griggs and Taylor,supra.
The Church and the Reddens also argue that because they have paid taxes on the property, they are entitled to full title to the property. This Court rejected that argument in State ex rel. Attorney General v.Tarleton, 279 Ala. 555, 188 So.2d 516 (1966) (holding that land owned by the State is not subject to taxation, and, therefore, no taxes can be due on the land and no one can acquire title to state lands through a tax sale).
Based on an independent review of the evidence before the trial court and on an application of this Court's decisions in Griggs and Taylor, we affirm the judgment of the trial court in each case.
1992332 — AFFIRMED.
1992339 — AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, and BROWN, JJ., concur.
[1] The issue whether the trial court had the authority to grant title in fee simple to the State has not been raised in this appeal.
[2] The record shows that the testimony of the plaintiffs' witness and the witness offered by the State, both on direct and on cross-examination, are in agreement. We therefore characterize this testimony as undisputed.
[3] Although we have concluded that the evidence in this case is undisputed, we note that the fact that the trial court viewed the property might warrant a more deferential standard of review. See Whittv. Hulsey, 519 So.2d 901 (Ala. 1987) (stating the settled rule that the ore tenus presumption of correctness in a boundary-line case is strengthened when the trial court views the property). This case is not a boundary-line case, but this Court might reasonably defer to the trial court's judgment as based on its view of the property because such deference would be analogous to the deference called for by the rationale applied in ore tenus cases generally, i.e., deference to a trial court's judgment based upon its ability to observe the witnesses. Hall v.Mazzone, 486 So.2d 408 (Ala. 1986). Under the circumstances of this case, however, we conclude that the trial court's judgment is due to be affirmed, even without the deference afforded by a presumption of correctness. Accordingly, we need not consider the application of a more deferential standard of review. *Page 204