WOODALL, Justice.
Black Warrior Minerals, Inc. (“Black Warrior”), sued Empire Coal Sales, Inc. (“Empire”), and John Fay, Jr., seeking amounts allegedly owed pursuant to a coal-purchase agreement between Black Warri- or and Empire and a personal guaranty executed by Fay. The trial court entered a summary judgment in favor of Black Warrior on its claims against Empire, awarding Black Warrior $689,496.24 in damages, plus attorney fees and costs. The trial court held a bench trial on the breach-of-guaranty claim against Fay at which ore tenus evidence was presented. The trial court entered a judgment in favor of Fay, and Black Warrior has appealed that judgment. We reverse the trial court’s judgment in favor of Fay and remand the case for the trial court to enter a *651 judgment in favor of Black Warrior on its breach-of-guaranty claim against Fay.

Facts and Procedural History

On February 11, 2009, Empire entered into a coal-purchase agreement with Black Warrior, which provided, among other things, that “[Empire] agreed to purchase on open account and has purchased from [Black Warrior] in excess of ... $1,200,000 worth of coal.” That same day, Fay executed a personal guaranty, which provided, in pertinent part:
“I, John Fay, waiving demand and notice, hereby personally guarantee the collection, performance and full payment of all monetary obligations of [Empire] to [Black Warrior], including all existing debt as of the date hereof and all future obligations under [the coal-purchase] Agreement.
“In consideration of the amounts evidenced by this Agreement in excess of ... $1,200,000 payable by [Empire], the undersigned guarantees the prompt payment of said amounts, when due, whether at stated maturity, acceleration, or otherwise, and in accordance with all terms and conditions of the Agreement, and agree to all terms and conditions and affirm the waivers and consents contained herein.”
In November 2009, Black Warrior sued Empire and Fay, seeking to recover amounts allegedly owed for coal Black Warrior had provided Empire pursuant to the agreement. Black Warrior asserted claims against Empire alleging breach of contract, open account, stated account, and goods sold and delivered. Black Warrior also stated a claim against Fay alleging breach of the guaranty.
After a hearing, the trial court entered a summary judgment in Black Warrior’s favor on its claims against Empire, awarding Black Warrior a total of $700,105.36, but denied Black Warrior’s motion for a summary judgment on its breach-of-guaranty claim against Fay. Following a bench trial on the breach-of-guaranty claim, the trial court entered a judgment in favor of Fay, concluding that the language of the guaranty was ambiguous and finding that the guaranty applied only to amounts in excess of $1.2 million owed by Empire to Black Warrior.
Black Warrior moved the trial court for a new trial or, in the alternative, to alter, amend, or vacate its judgment on the breach-of-guaranty claim. The trial court denied that motion, and Black Warrior has appealed from the judgment in favor of Fay.

Issue

This Court must determine whether the trial court erred in concluding that the language of the guaranty was ambiguous and that the guaranty applied only to amounts owed by Empire to Black Warri- or in excess of $1.2 million.

Standard of Review

“This Court set out the applicable standard for reviewing a trial court’s determination that a contract is ambiguous in Winkleblack v. Murphy, 811 So.2d 521, 525-26 (Ala.2001):
“ ‘The question whether a contract is ambiguous is for a court to decide. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 (Ala.1999). As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law. Commercial Credit Corp. v. Leggett, 744 So.2d 890 (Ala.1999). Thus, we apply a de novo review to a trial court’s determination of whether a contract is ambiguous and to a trial court’s determination of the legal effect of an unambiguous contract term.
“ ‘Once the trial court determines that an ambiguity exists in a contract, *652 the meaning of that contract is to be determined by the trier of fact. Employees’ Benefit Ass’n v. Grissett, 732 So.2d 968 (Ala.1998); Glenlakes Realty Co. v. Norwood, 721 So.2d 174 (Ala.1998). In this case, the trier of fact was the trial court, and the court heard ore tenus evidence.
“ ‘ “Where ore tenus evidence is presented to the trial court in a nonjury case, a judgment based on that evidence is presumed to be correct and will not be disturbed on appeal unless a consideration of the evidence and all reasonable inferences therefrom reveals that the judgment is plainly and palpably erroneous or manifestly unjust.”
“ ‘Bertolla v. Bill, 774 So.2d 497, 503 (Ala.1999) (quoted in Redden v. State, 804 So.2d 196 (Ala.2001)).’
“In this case, the trial court was the trier of fact and heard ore tenus evidence. Following the standard set out in Winkleblack, supra, we must engage in a two-part analysis. First, we must review de novo the trial court’s determination that the guaranty is ambiguous. Second, if we find ... that the guaranty is ambiguous, we must then determine whether the trial court’s holding that [the guaranty covers only debts owed to Black Warrior that exceed $1.2 million] was ‘plainly and palpably erroneous or manifestly unjust.’ ”
SouthTrust Bank v. Copeland One, L.L.C., 886 So.2d 38, 41 (Ala.2003).

Analysis

Black Warrior argues that “the trial court erred in its finding that the Guaranty ... was ambiguous and only guarantees that part of any debt which [Empire] owes [Black Warrior] in excess of $1,200,000.” Black Warrior’s brief, at 10. Black Warrior argues:
“The language of the Guaranty is not ambiguous, particularly when read in conjunction with the Agreement. The Guaranty specifically states: ‘Full payment of all monetary obligations of Empire Coal Sales, Inc. ... including all existing debt as of the date hereof and all future obligations under said Agreement.’ This wording makes it clear that the parties intended for the Guaranty to be inclusive of all obligations under the Agreement. ‘Full payment’ means full payment — ‘all existing’ and ‘all future’ means every debt then existing and to be incurred.”
Black Warrior’s brief, at 11-12.
Black Warrior goes on to argue:
“The phrase ‘In consideration of the amounts evidence[d] by this Agreement in excess of [$1,200,000]’ contained in the Guaranty speaks to the amount of consideration recited in the Agreement as having already been tendered, and does not operate as a ‘cap’ or limitation of Defendant Fay’s personal liability. The Agreement acknowledges that Empire had purchased in excess of $1,200,000 from Black Warrior.”
Black Warrior’s brief, at 13 (emphasis in original).
Fay argues in response that “[t]he terms of the Guaranty are patently ambiguous” and that, “[f]rom the language of the document alone, the court could not determine what the parties intended.” Fay’s brief, at 6. Fay argues that the ambiguity arises from the phrase “said amounts” in the second paragraph of the guaranty and that this phrase, read in context with the phrase “[i]n consideration of the amounts evidenced by this Agreement in excess of ... [$1.2 million] payable by Empire” in the second paragraph, provides that Fay is responsible for only those debts in excess of $1.2 million. On the other hand, Fay notes, the first paragraph of the guaranty *653 provides that Fay is responsible for “all existing debt ... and all future obligations.”
We agree with Black Warrior that the terms of the guaranty are unambiguous. This Court has stated:
“Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.”
Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000) (citations omitted).
Neither party argues that the terms of the guaranty are used in a special or technical sense. Therefore, we will give the terms their “ordinary, plain, and natural meaning.” McCollough, 776 So.2d at 746. As noted previously, the first paragraph of the guaranty provides that Fay “personally guaranteed the collection, performance and full payment of all monetary obligations of [Empire] ..., including all existing debt ... and all future obligations under said Agreement.” (Emphasis added.) Nothing in the first paragraph suggests that there is any limit on Fay’s obligations under the guaranty.
The second paragraph provides, in pertinent part, that, “[i]n consideration of the amounts evidenced by this Agreement in excess of [$1.2 million] payable by [Empire], [Fay] guarantees the prompt payment of said amounts.” As with the first paragraph, nothing in this language suggests that it was intended to modify or limit the obligations undertaken in the first paragraph. Instead, it appears simply to refer to the amount of debt Empire had incurred before the execution of the guaranty and the coal-purchase agreement, that is, the consideration in excess of $1.2 million,[1] and to elaborate on Fay’s obligation to pay that debt, as well as all other amounts owed by Empire to Black Warri- or.
Fay’s proposed construction of the guaranty — treating the language of the second paragraph as a modification of or a limitation on the terms of the first paragraph — is not supported by the plain language of the guaranty and would, in effect, render the unconditional terms of the first paragraph meaningless. “ ‘[P]arties to a contract will not be imputed with using language that is meaningless or without effect.’ ” Black Diamond Dev., Inc. v. Thompson, 979 So.2d 47, 51 (Ala.2007) (quoting McGoldrick v. Lou Ana Foods, Inc., 649 So.2d 455, 458 (La.Ct.App.1994)).
Reading the terms of the guaranty in context and giving those terms their “ordinary, plain, and natural meaning,” we conclude that the guaranty is “susceptible of only one reasonable meaning,” McCollough, 776 So.2d at 746—that it covers “all monetary obligations ..., including all existing debt ... and all future obligations,” and that it is not limited to debts in excess of $1.2 million. (Emphasis added.) Therefore, the trial court erred in finding that the terms of the guaranty are ambiguous and in entering a judgment in favor of Fay.

*654
Conclusion

For these reasons, we reverse the trial court’s judgment in favor of Fay on the breach-of-guaranty claim and remand the case for the trial court to enter a judgment in favor of Black Warrior on that claim.
REVERSED AND REMANDED WITH INSTRUCTIONS.
BOLIN, MURDOCK, SHAW, and MAIN, JJ., concur.

. It is undisputed that Empire’s debt to Black Warrior at the time the agreement and guaranty were executed was more than $1.2 million. See Fay’s brief, at 12 ("On February 11, 2009[,] the outstanding balance of [Empire] was at its peak of $1,224,385.46.”).