Rel:  December 20, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0085

_____

**King, King & King Attorneys at Law, PC**

**v.**

**Lisa Drum**

**Appeal from Etowah Circuit Court**
**(CV-19-900097)**

EDWARDS, Judge.

King, King & King Attorneys at Law, PC ("King & King"), appeals from a judgment entered by the Etowah Circuit Court ("the trial court") in a quiet-title action commenced by Lisa Drum regarding an

approximately 13.2-acre parcel of property ("the property") located in Etowah County.[1]

In 1988, Corporate South Development, Inc., executed a warranty deed conveying its interest in the property to Michael E. Jenkins and "wife, Pam Jenkins," a/k/a Pamela Nichole Jenkins, as joint tenants with right of survivorship. Based on a statement made by Pamela in a quitclaim deed conveying her interest in the property to James Jenkins III ("James III"), a deed that was recorded in the Etowah Probate Court ("the probate court") in March 1995 ("James III's deed"), Michael and Pamela were divorced by a judgment entered in the trial court in December 1992 in case number DR-92-692. Also, according to statements made by Pamela in James III's deed, she and Michael had entered into a trust agreement pursuant to which the property was to be conveyed to

---

[1]There is more than one legal description of the property in the numerous deeds in the record, and no survey is included in the record that purported to reconcile those legal descriptions. However, the parties did not dispute that the property described in the deeds is the same property in which each was claiming an interest.

James III because he had purportedly paid certain indebtedness related to the property.[2]

Michael and purportedly "Pam" executed a warranty deed conveying the property to Mitchell E. Kessler that was recorded in the probate court on August 26, 1994 ("Kessler's deed"). A few days later, Kessler executed a warranty deed conveying respective one-eighth undivided interests in the property to Charles R. Trotter and Andrew H. Roberts that was recorded in the probate court. Kessler eventually discovered that the "Pam" who had executed his deed was not Pamela, i.e., that Pamela's signature had been forged, and he commenced an action against Michael and Pamela in the trial court; that action was assigned case number CV-94-1019 ("the Kessler action").[3] Neither

---

[2]It does not appear that a written trust agreement was executed, and it is unclear from the record whether a resulting trust may have existed.

[3]Based on a judgment entered in the Kessler action in September 1999, Kessler had negotiated with Michael for the purchase of the property, and Michael had represented to Kessler that he owned the property, although title to the property had been in Michael's name and Pamela's name. Michael also did not inform Kessler that James III claimed an interest in the property. The September 1999 judgment stated that Michael had breached his warranties to Kessler, had

Trotter nor Roberts was a party to that action. Although "[a] forged deed is void, and completely ineffectual to pass title,'" Sheffield v. Andrews, 679 So. 2d 1052, 1054 (Ala. 1996) (quoting Cumberland Cap. Corp. v. Robinette, 57 Ala. App. 697, 331 So. 2d 709 (1976)), we have assumed, simply for purposes of this opinion, that Kessler's deed might have resulted in Michael's conveying his one-half undivided interest in the property to Kessler, who subsequently conveyed part of that interest to Trotter and Roberts. See Upchurch v. Upchurch, 386 So. 3d 1, 5 (Ala. 2023) (stating that "a joint tenancy with the right of survivorship may be severed or destroyed by an act of one or more of the tenants that is

---

fraudulently procured the closing of the "transaction and payment of the purchase price by Kessler," and had fraudulently "procured the execut[ion] of the deed by someone other than [Pamela]," and that his conduct was intentional. The September 1999 judgment stated that, as a result of Michael's actions, Kessler had been caused to "lose the purchase price of the property" and had "incurred expenses in defending a lawsuit initiated by [Pamela] and [James III] regarding title to the property." A judgment in the amount of $24,167 was entered in favor of Kessler and against Michael. As noted above, Pamela was a named defendant in the Kessler action, but it is unclear from the record what, if any, adjudication was made as to her or her interest in the property. A certificate of judgment was issued in the Kessler action on December 7, 1999, and Kessler filed a satisfaction of judgment in June 2005.

inconsistent with the continuation of the joint tenancy," which results in the parties holding the property as tenants in common).

As noted above, James III's deed from Pamela was recorded in the probate court in March 1995. Based on an "Alabama Property Record Card" ("the card") from the Etowah County Tax Assessor's office, James III had the property assessed in his name in 1995, which resulted in the property being double assessed. The original parcel-identification number for the property was 03-07-26-0-000-008.000, which was used in regard to Kessler and his successors in interest; the parcel-identification number as to James III was 03-07-26-0-000-008.000-1, which apparently is the format used by the Etowah County Tax Assessor to indicate a double assessment as to part or all of a parcel. The notes section of the card further states that the property was double assessed "with 31-03-01-26-8.00 (Mitchell, Kessler & [illegible])"[4] and "Court to Decide Verbal Agreement & Whether Deed was Signed in Fraud." It is unclear whether the "Court to Decide" reference was to the Kessler action or to other pending or prospective litigation. See note 3, supra (referencing a

---

[4]The parcel-identification number is incorrect.

"lawsuit" filed by Pamela and James III against Kessler). A handwritten note on an "Abstract Search" states: "Court to Decide Verbal A" and "#CV-98-1369 … Dismissed by Judge 3/30/2000." It is unclear whether CV-98-1369 was the litigation involving Pamela and James III that is referenced in the September 1999 judgment in the Kessler action, see note 3, supra, or some other litigation.

Based on the foregoing, as of 1995, the property was assessed to Kessler, Trotter, and Roberts under parcel identification number 03-07-26-0-000-008.000 and was assessed to James III under parcel identification number 03-07-26-0-000-008.000-1. On July 31, 1997, taxes were assessed against the property in the amount $46.80 ($46.80 was the full assessment on the property), and a tax bill for that amount was issued to Kessler, Trotter, and Roberts; a separate tax bill for that amount was issued to James III. On February 18, 1998, Robert H. King, who was a lawyer with King & King, paid the 1997 tax bill, plus a penalty, that had been issued to James III. Thereafter, Robert H. King, James III, or someone from King & King or Robert H. King's estate continued to pay subsequent tax assessments against the property, as

those assessments were billed to James III, through the commencement of the present action. Kessler, Trotter, and Roberts, however, failed to pay the 1997 tax bill that had been issued to them.

Based on the failure of Kessler, Trotter, and Roberts to pay their 1997 tax bill, a tax sale was scheduled regarding parcel identification number 03-07-26-0-000-008.000. It does not appear that James III received actual notice of the scheduled tax sale. On May 19, 1998, Judy Pitts, as Etowah County Revenue Commissioner, completed a tax sale of the property to John Williams. Williams is the predecessor in interest to Drum, and it is undisputed that tax assessments using parcel identification number 03-07-26-0-000-008.000 were issued to and paid by Williams or his respective successors in interest each year from 1998 through the commencement of the present action.

On May 27, 1998, Kessler, Trotter, and Roberts executed a quitclaim deed conveying the property to Julie Lynn Jenkins ("Julie"), in her capacity "as Custodian under the Uniform Gift to Minors Act" for Chrissie Jenkins ("Chrissie"), Laura Jenkins ("Laura"), and James

Jenkins IV ("James IV"), all of whom were described as minors;[5] to King & King; and to Burns, Burn, Burns, & Morgan ("BBBM"). The conveyance was described as being a one-half undivided interest to Julie, as custodian, and a one-half undivided interest to King & King and BBBM; the deed was recorded in the probate court on August 24, 1998 ("the August 1998 deed"). Also on August 24, 1998, a quitclaim deed was recorded in the probate court, pursuant to which BBBM purported to convey to King & King a "one-half undivided one-half interest" in a 6.53-acre tract that was part of the property.[6]

An unsigned "Application for Redemption" in the records of the Etowah County Tax Assessor's office states that "Kessler, Mitchell & Andrew ha[d] made application to redeem" the property and that the redemption price was $372.52 (the purchase price that had been paid by

---

[5]Pursuant to Ala. Code 1975, § 35-5A-22, the conveyance was actually to Julie as custodian under the Alabama Uniform Transfers to Minors Act, Ala. Code 1975, § 35-5A-1 et seq.

[6]It is unclear from the record whether Julie, as custodian, had agreed to any subdivision of the property and whether BBBM had fully conveyed its interest in the property, as opposed to merely its interest in a 6.53-acre tract, to King & King.

Williams, plus ad valorem taxes for 1998 and 1999, plus interest and costs). The application indicated that it had to be executed and returned with payment by May 31, 2000, but that was never done.

On May 23, 2001, a tax-sale deed ("the tax deed") to Williams was recorded in the probate court. US Bank Tr., N.A. v. Trimble, 296 So. 3d 867, 869 (Ala. Civ. App. 2019) ("Generally speaking, a tax-sale purchaser is entitled to demand a tax deed after the expiration of three years from the date of the sale. Ala. Code 1975, § 40-10-29."). The tax deed recited the details of the May 1998 tax sale, referenced that Kessler, Trotter, and Roberts had been the owners of the property, and stated that the "time for redemption of said lands by said owner or other persons having an interest therein has elapsed and said certificate of purchase has been returned to the Revenue Commissioner."

As noted above, Williams is Drum's predecessor in interest to the property. Drum apparently attempted to sell the property, and issues regarding her title arose. On February 11, 2019, Drum filed in the trial court a complaint against King & King; Julie, as custodian for Chrissie, Laura, and James IV; Etowah County; and fictitiously named parties. In

9

Drum's complaint, she alleged that she had color of title to the property based on the tax deed to Williams and the subsequent deeds to his successors in interest and that she had adversely possessed the property. Drum also alleged that "members of the Jenkins family" had had title to the property before the tax sale and that Jenkins and King & King purportedly claimed an interest in the property, which, she admitted, had been the subject of dual tax assessments.

On May 29, 2019, Drum filed a motion for a default judgment against Julie, as custodian for Chrissie, Laura, and James IV, based on Julie's failure to respond to the complaint after service of process. On May 31, 2019, the trial court entered an order granting Drum's motion for a default judgment. We note that the record does not disclose when Chrissie, Laura, and James IV were born. However, based on the August 1998 deed, they were adults under Alabama law when Drum filed her complaint, see Ala. Code 1975, § 26-1-1 (describing the age of majority as 19 years), although one or more of them might still have been a minor for purposes of the law applicable to a custodianship. See Ala. Code 1975, 35-5A-2(11) (defining a "minor" as "[a]n individual who has not attained

10

the age of 21 years"). See Rule 55(b)(2), Ala. R. Civ. P. ("[N]o judgment by default shall be entered (A) against a minor … unless the minor … is represented in the action by a general guardian or other representative as provided in Rule 17(c)[, Ala. R. Civ. P.,] who has appeared therein."); see also Rule 55(e) ("No judgment by default shall be entered against minors … unless the claimant establishes the party's claim or right to relief by evidence."). In any event, by the time of the trial in April 2022, Chrissie, Laura, and James IV were no longer minors, even under the law governing custodians, and any interest that they had in the property already should have been conveyed to them by Julie. See Ala. Code 1975, § 35-5A-21.

On June 12, 2019, King & King filed an answer denying the material allegations of Drum's complaint. According to King & King, the tax sale to Williams was illegal or void because the taxes had been paid on the property before the tax sale occurred and, thus, it asserted, the tax deed should not have been issued to Williams. On June 13, 2019, King & King filed an amended answer to Drum's complaint, adding a demand for a jury trial.

At Drum's request, the trial court voluntarily dismissed, without prejudice, Etowah County as a defendant. Drum amended her complaint to add Linda Barrett-Vaughn, in her capacity as revenue commissioner of Etowah County, as a defendant. In her amended complaint, Drum added compensatory-damages claims against Barrett-Vaughn based on negligence, reckless misrepresentation, and unjust enrichment. King & King filed an answer to Drum's amended complaint, reasserting the allegations in its previously filed answer, and, on October 25, 2019, King & King filed another amended answer to Drum's complaint, a counterclaim against Drum, and a crossclaim against Julie. Regarding its counterclaim and crossclaim, King & King requested a judgment declaring that it owned 6.53 acres of the property and enjoining Drum and Julie from trespassing on those acres. Also, according to King & King,

> "[t]here had been years of litigation with respect to [the property] between James Jenkins, III, and wife [Julie Jenkins] as against another realtor company that was in fact settled in December of 1997. That pursuant to said settlement the owners of said Kessler firm executed a quit claim deed of May 27, 1998[,] to [the property] pursuant to the agreement of those parties to Julie Lynn Jenkins as custodian under the uniform gift to minors act for Christy Jenkins, a

12

> minor; Laura Jenkins, a minor; James Jenkins, IV, a minor and King, King and King Attorneys at law, P.C. (a professional corporation) and Burns, Burns, Burns and Morgan Attorneys."

King & King further alleged that Williams had acquired no legal title and had conveyed no legal title to his purported successors in title. In addition to requesting declaratory and injunctive relief, King & King also requested that the trial court quiet title in the property with respect to 6.53 acres, naming King & King the owners as against the claims of Drum and Julie. It does not appear that King & King attempted to serve Julie with its crossclaim.[7] Drum filed an answer denying the material allegations in King & King's counterclaim. Drum also filed a second amended complaint, adding a claim for inverse condemnation against Barrett-Vaughn, and a third amended complaint clarifying that her claims against Barrett-Vaughn were asserted against her in her official capacity.

---

[7]Two successors in interest to Williams executed a deed to Julie purporting to convey a .42-acre parcel of property and an easement; the .42-acre parcel has road frontage and is surrounded by the property on three sides. That parcel, however, is excepted from the legal description to the property in Drum's deed.

Following a status conference, the trial court entered an order on May 21, 2021, setting Drum's quiet-title claim for a trial to be held on October 1, 2021, and stating that Drum "d[id] not rely on adverse possession to support her claim." The May 2021 order further set various deadlines and stated that "[a]ny claim that is subject to trial by jury will be set by future order." Trial was reset, and Barrett-Vaughn retired as revenue commissioner of Etowah County on October 1, 2021; her successor in office was Becky Nordgren, who was substituted for Barrett-Vaughn in the action. See Rule 25(d)(1), Ala. R. Civ. P. (providing for automatic substitution when a public officer ceases to hold office).

A bench trial was held "on the issue of quiet title" on April 18, 2022. At trial, Drum argued that she would establish her claim to the property using Ala. Code 1975, § 40-10-82. See Trimble, 296 So. 3d at 869 ("Our supreme court has construed § 40-10-82 as establishing a 'short statute of limitations' for tax-deed cases, pursuant to which, 'to bar redemption under [Ala. Code 1975,] § 40-10-83, the tax purchaser must prove continuous adverse possession for three years after he is entitled to demand a tax deed.' Gulf Land Co. v. Buzzelli, 501 So. 2d 1211, 1213

14

(Ala. 1987)").  Drum's attorney articulated Drum's position at trial as follows:

> "What we're here about today, Judge, is just simply clearing up does my client own the property?  She has an opportunity to sell it to her advantage but can't do it.  … I believe the law and the facts are all in her favor.  We believe the tax sale was valid.  There's never been any redemption.
>
> "We believe that even if the tax sale wasn't valid, which you'll get to be the determiner of that, that the law still says the fact that she took possession and improved it and lived on it will defeat any future claims anyway."

Based on the May 2021 order, King & King objected to Drum's attempting to prove that she might have adversely possessed the property, and King & King insisted that it was entitled to a jury trial.

On May 6, 2022, the trial court entered an order quieting title to the property in Drum.  In the May 2022 order, the trial court stated that Drum owned the property via the respective deeds from Williams and his successors in title based on the tax sale held in May 1998.  The May 2022 order further stated that, regarding

> "[t]he lawsuit that was presented to this Court regarding the conveyance of the property by Michael … and Pam[ela] … was Etowah County case CV-1994-1019.  The judgment that was admitted … grants a judgment to Kessler and against Michael … for 'false pretenses, false representations and actual

fraud....' It states that Michael … procured the execution of the deed by someone other than Pamela Jenkins. …

"The judgment awarded to Kessler and against Michael … was a money-damages award consisting of both compensatory and punitive damages. That judgment does not purport to reform or set aside any deed.

"While this is certainly evidence of fraud in the making of the deed from Michael … and Pam[ela] … to Kessler, if that deed has been reformed or set aside then this Court has not been provided evidence of that.

"… [A]ny interest [King & King] may have must necessarily flow from the deed in which Michael … and Pam[ela] … were the grantors -- however, the interest that flowed from that deed ended up with Kessler, Trotter, and Roberts and then the tax sale.

"As of the May 19, 1998, tax sale, the property was owned by Kessler, Trotter, and Roberts. Pam[ela] Jenkins apparently had no interest to deed to James Jenkins, III, in 1995. Therefore Kessler, Trotter, and Roberts owned the property as of May 19, 1998. The May 29, 1998, Quitclaim Deed … from Kessler, Trotter, and Roberts to Julie Jenkins, [King & King], and [BBBM] came after the tax sale and was issued without authority given the result of the tax sale.

"Therefore, as a result of the tax sale John Williams ultimately became the owner of the property."

The May 2022 order further stated that "Lisa Drum, and her predecessors in title, have been in possession of the property for much

16

longer than three years. Therefore, no redemption from the tax sale is possible and no challenge to the tax sale is possible."

Contemporaneously with the entry of the May 2022 order, the trial court entered an order that stated: "This case will be set for further hearing on motion of any party." King & King filed a notice of appeal to the supreme court from the May 2022 order. The supreme court transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6), and, on April 13, 2023, this court entered an order dismissing that appeal as having been taken from a nonfinal judgment.

After the entry of this court's order of dismissal, King & King filed in the trial court a motion pursuant to Rule 19, Ala. R. Civ. P., arguing, in part, that James III, and Chrissie, Laura, and James IV, "who probably are adults now," should be made parties to the case. The trial court held a hearing to consider that motion and other matters. On September 20, 2023, the trial court entered a judgment denying all remaining claims; it also denied all pending motions, which would include King & King's Rule 19 motion.

On October 15, 2023, King & King timely filed a postjudgment motion; that motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. On January 18, 2024, King & King filed a notice of appeal to the supreme court, which transferred the appeal to this court, pursuant to § 12-2-7(6).

Because we find King & King's Rule 19 argument to be dispositive, we pretermit discussion of its remaining arguments. We first note that Drum's complaint was ambiguous regarding whether she was seeking to quiet title to the property only as between her and certain persons or as between her and all others who might claim an interest in the property. On the one hand, her complaint stated that her quiet-title claim was filed pursuant to Ala. Code 1975, § 6-6-540, which states:

> "When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in his own right …, and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, any part thereof, or any interest therein or to hold any lien or encumbrance thereon and no action is pending to enforce or test the validity of such title, claim, or encumbrance, such person …, so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same."

An action pursuant to § 6-6-540 is an in personam action to determine the parties' respective interests, if any, in lands. Thus, such an action results in a judgment determining only "whether the defendant has any right, title, or interest in, or encumbrance upon, such lands, or any part thereof, what such right, title, interest, or encumbrance is and in or upon what part of the lands the same exists." Ala. Code 1975, § 6-6-543; see also State ex rel. Atty. Gen. v. Tarleton, 279 Ala. 555, 559, 188 So. 2d 516, 520 (1966) (discussing the predecessor statute to § 6-6-540 and quoting Dake v. Inglis, 239 Ala. 241, 243, 194 So. 673, 674 (1940), for the proposition that " '[t]he purpose of the proceeding is not to invest the court with jurisdiction to sell or dispose of the title to the land, but merely to determine and settle the same as between the complainant and the defendants'" and stating that " 'the fact that there are others who might assert claims to the property, who are not made parties, is not an obstacle to proceeding to a final decree settling the title as between the parties to the bill'" and that " '[t]he decree is only conclusive against such as are made parties and their privies'").

19

Notwithstanding the foregoing, Drum's fictitiously named defendants included "fictitious defendants a-z, representing all persons claiming any present interest [in the property] and including any persons claiming any future, contingent, reversionary, remainder, or other interest therein, who may claim any interest in the above-described property." Likewise, in Drum's request for relief, she stated:

> "[Drum] files this petition against the named Defendants and against the lands and against all parties or persons claiming any present interest therein or including any persons claiming any future, contingent, reversionary, remainder, or other interest therein, or who may claim any interest in the above-described property and seeks the following Court action and relief:
>
> "a. That this honorable Court would set a hearing at the earliest possible time following service by publication, if applicable; and,
>
> "b. Appoint a Guardian Ad Litem if this Court deems such to be due and necessary to protect the interests of the Defendants, or until such time as the Defendants can be located and Answer this claim themselves or through counsel of their choice; and,
>
> "c. An Order to establish the right and title of [Drum] to the said lands and to clear up all doubts or disputes concerning the same; and,
>
> "d. [Drum] requests that the Defendants who are made parties to this proceeding and notice hereof be given to them

by publication, in accordance with the law, requiring the Defendants to defend, plead or answer thereto within the time required by law, or suffer default judgment against them, in the event that service by normal means is not available; and,

"e. [Drum] requests that the court will make and enter all Orders, Judgments, and Decrees that may be necessary or proper in the premises, and upon a final hearing hereof, [Drum] requests the Court will make and enter a decree that [Drum] has the entire and undivided fee simple interest in and to the said lands, with no restrictions thereon, except any utility right of way easements; and,

"f. Such other, further, different or general relief as it may be entitled to in the premises."

Drum's request for relief is more consistent with an in rem quiet-title action pursuant to Ala. Code 1975, § 6-6-560 et seq., which includes provisions for naming unknown parties as defendants, see Ala. Code 1975, § 6-6-561, notice by publication for unknown parties, see Ala. Code 1975, § 6-6-564, and,

"should it appear that any of the defendants are infants or persons of unsound mind or should the identity of some, or all, of said defendants be unknown, the ... appoint[ment of] a guardian ad litem to represent and defend the interest of such infant, incompetent or unknown parties in the proceeding."

Ala. Code 1975, § 6-6-562.

We note the foregoing because, regardless of the fact that Drum purported to proceed with her claim pursuant to § 40-10-82, she was either seeking a judgment as to the interests of particular persons in the property or as to all persons in the property. To adjudicate the interests of such persons to the property, those persons must be named as defendants and provided appropriate service of process, whether personally or by publication, as the circumstances might warrant. As this court stated in Darby v. Presley, 327 So. 3d 242, 245 (Ala. Civ. App. 2020), this court must consider whether the failure to join certain parties pursuant to Rule 19, particularly persons whose interests are at issue in a quiet-title action, "constitutes a defect requiring reversal of the judgment," whether raised by the parties in the trial court or on appeal or raised by an appellate court ex mero motu.

Rule 19(a) states that

"[a] person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party."

We have also stated that

"'[t]he general rule in a court of equity is that all persons having a material interest, legal or equitable, in the subject matter of a suit, must be made parties, either as plaintiffs or defendants. The rule proceeds on the principle that no man's rights should be controverted in a court of justice unless he has full opportunity to appear and vindicate them; and further, that complete justice may be done and future litigation avoided, the performance of the decree being safe, because of the presence in court of all parties who have an interest in its subject matter.'"

JPMorgan Chase Bank, N.A. v. Bradshaw, 124 So. 3d 162, 166 (Ala. Civ. App. 2013) (quoting Rollan v. Posey, 271 Ala. 640, 645, 126 So. 2d 464, 468-69 (1961)).

In the present case, the trial court did not purport to simply adjudicate the rights of Drum to the property as against the interests of King & King. Instead, the trial court purported to adjudicate whether James III had any interest in the property, despite the fact that neither he, nor his successors in interest, if any, had been made parties to the case. Likewise, the trial court purported to adjudicate the interests of

23

Chrissie, Laura, and James IV in the property, without them having been made parties to the case and without them having legal representation, to the extent that they may have been minors, when the default judgment was entered against Julie, as custodian. See discussion, supra; see also Ala. Code 1975, § 35-5A-12(b) ("A transfer made pursuant to [Ala. Code 1975, §] 35-5A-10[,] is irrevocable, and conveys to the minor indefeasibly vested title to the custodial property, but the custodian has the rights, powers, duties, and authority provided in this chapter, and neither the minor nor the minor's legal representative has any right, power, duty, or authority with respect to the custodial property except as provided in this chapter.").

We see no need for an extended discussion regarding the applicability of Rule 19 under the circumstances. Drum attempted to have the trial court determine that she was the sole owner of the property to the exclusion of not only King & King, but also nonparties who purportedly were or might be tenants in common with King & King, i.e., James III, Chrissie, Laura, James IV, and perhaps others who may have an interest in the property or a part of the property, see note 6, supra,

24

but without providing those persons full opportunity to appear and vindicate their respective rights, if any. Even if the judgment had been limited to solely adversely adjudicating the interest of King & King, the issue would remain whether Drum was the sole owner of the property or whether she had obligations, as a cotenant, to James III, Chrissie, Laura, James IV, and perhaps others who may have an interest in the property or a part of the property. Under the circumstances, we reverse the judgment and remand the cause for the trial court to join as parties in the action James III, Chrissie, Laura, James IV, and any other person whose interest Drum desires to have adjudicated regarding the property or who are otherwise needed for a just adjudication and to conduct other proceedings consistent with this opinion, including, if joinder of an interested person or persons cannot take place, determining whether the action can properly proceed in the absence of such person or persons. See Rule 19(b).

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Lewis, JJ., concur.